John Delbert Crowe and wife, Elsie Marguerite Crowe,
Appellants,

*v.*

Estate of Jack Harkins, Appellee.

416 S.W.2d 770.

(*Knoxville,* September Term, 1966.)

Opinion filed June 16, 1967.

Joel W. Richardson, Jr., of counsel, Witt, Gaither, Abernathy & Wilson, Chattanooga, for appellants.

Will Allen Wilkerson and Daniel C. B. Levy, Chattanooga, for appellee.

Mr. Justice Creson delivered the opinion of the Court.

This appeal comes from the Circuit Court of Hamilton County, Tennessee. The case was heard in the court below upon stipulation of facts and briefs. It was agreed by the parties in the court below, and is agreed on appeal, that the sole issue to be decided is the amount of damages to which the appellants are entitled.

The stipulation of facts in the court below reveals that the appellants, John Delbert Crowe and wife, Elsie Marguerite Crowe, purchased shares of stock in the First Flight Company and Professional Golf Company, under agreement with one Jack Harkins, whose estate is the appellee in the present case. The letter agreement, pursuant to which the appellants purchased the aforementioned stock, contains the following language:

"If I were you and Mrs. Crowe, I would borrow the money and buy 1000 shares each of Pro Golf and First Flight. Hold it for two years; I will guarantee you against loss and without a doubt, I know you will make $20,000 in capital gains from this investment within two years."

The appellants purchased 1,000 shares of First Flight Company, and 400 shares of Professional Golf Company, as agreed in the letter, for the total purchase price of $13,900.00, on or about January 5, 1962.

·· On January 3, 6 and 7, 1964, the fair market value of these 1,400 shares of stock was $9,834.00, a figure $4,066.00 less than the original purchase price.

On September 29, 1964, Jack Harkins died.

On July 9, 1965, the appellants sold the 1,400 shares of stock for a total sales price of $4,150.00; that is, some $9,750.00 less than the original purchase price. It is this figure which appellants now claim they are entitled to recover.

The trial court determined that the appellants were entitled to recover $4,066.00, or the difference between the purchase price of the 1,400 shares of stock and its fair market value, at the expiration of two years after the purchase.

The assignment of error in this Court is as follows:

"The Court erred in determining damages on the basis of the difference between the purchase price of the stock and the value of the stock two years from the date of purchase, rather than determining damages on the basis of the difference between the purchase price of the stock and the subsequent sales price of the stock or, in the alternative, on the basis of the difference between the purchase price of the stock and the value of the stock at a reasonable time after Jack Harkins, deceased, became obligated to indemnify the appellants against loss."

The appellants' argument in this Court is that the language previously quoted created an indemnity contract subject to a condition precedent. They say that, for that reason, the amount of damages must be determined on the date the appellants suffered their loss, July 9,

1965, when they actually sold their stock. They further say, in the alternative, that their damages should be fixed within a reasonable time after Jack Harkins became obligated to indemnify the appellants against loss. This theory concludes with the proposition that the sale on July 9, 1965, was such reasonable time. Thus, the only question before this Court is—when is the proper time to measure damages under the agreement entered into between the appellants and Jack Harkins.

The appellee relies heavily upon the case of *Henegar v. Isabella Copper Co.* (1860) 41 Tenn. 241. This Court is of the opinion that this case, while containing some variant language, is, nonetheless, controlling. The legal principles announced therein are equally applicable to the instant case, and the intent of the parties is quite comparable. In *Henegar v. Isabella Copper Co.,* supra, an instrument was executed assuring Henegar that certain stock conveyed to him as part of the purchase price for mining rights upon certain lands "will be worth at least five dollars per share in three years from the 21st of July, 1853, and if not worth that much by the expiration of said three years, that said company will make good and pay over the deficiency to the said Henegar or his assigns." After the expiration of three years, Henegar brought suit upon this instrument, alleging that the stock had no market value. The defendant insisted that during the three year period, the stock had sold at $5.00 a share, and the proof sustained this position. The question, then, was the time for the ascertainment of the value of the stock. The Court determined that the proper time to make this determination was at the expiration of the three-year period. An original guaranty had been entered into by certain individual purchasers of mineral rights.

Subsequently, a corporation was formed to take the lands
and a subsequent guaranty entered into relating to the
stock between Henegar and the corporation. In reaching
its conclusion that it was the intent of the second guar-
anty that damages should be fixed at the expiration of
three years, this Court made the following pertinent ob-
servations:

> "By the former it is stipulated that if the 'stock shall
> fail to be worth five dollars per share *within said time,'*
> then he, Gilbert, 'shall make good the same.'
>
> But, in the latter guaranty, it is provided that if the
> stock shall not be worth $5 per share *'by the expiration
> of said three years,'* the company 'will make good and
> pay over the deficiency to said Henegar,' etc.
>
> The latter stipulations, though not so variant in the
> meaning from the former as to materially affect the
> construction from the former, is more explicit, and
> establishes that the proper *time* for determining the
> market value of the stock is at the 'expiration' of the
> three years from the date of the contract, and not any
> indefinite time 'within' that period.
>
> The reservation of so long a time was obviously for
> the benefit of the company. But with this advantage on
> the part of the latter, the risk was taken upon itself
> that the stock should be worth the price fixed upon, not
> merely *within* the three years, but at the *expiration* of
> that time. It is certainly true that the complainant
> might have sold his stock at any time within the period
> limited, but he was not bound to do so, especially at a
> less price than $5 per share. It is clear that if he had
> voluntarily sold within the three years at less than $5,
> it would have been at the peril that if the price ad-

vanced to $5 within that time, the guarantor would be discharged, and the complainant must have borne the loss.''

As this Court views the agreement between the Crowes and Harkins, the Crowes, once they purchased the stock, could sell at any time they chose. If they sold the stock before the expiration of the two-year period, no recourse against Harkins was available to them. However, if they held the stock for a period of two years and, at the expiration of that period, then sold the stock, Harkins would be liable for any loss they suffered. This is not at all to say that the Crowes could continue to speculate after the two years had elapsed, at the exposure of Harkins. The fallacy in any other conclusion is to be seen if one envisions what might well have occurred.

Suppose that the value of the stock increased substantially over its original price during the two-year period; and the appellants, instead of selling at a profit at the expiration of two years, decided to hold the stock and speculate upon further gains. This Court cannot conclude that upon such a set of facts Harkins would be liable under the agreement, if the stock thereafter suddenly fell sharply in value and appellants sold at a loss. As this Court derives the intent of the parties to this cause and the agreement sub judice, the appellants were allowed to purchase this stock and speculate for two years at the exposure of the appellee. Obviously, under the agreement, the Crowes, at their election, could sell the stock at any time within the two-year period. It is equally clear that if they held the stock for the two years, and at the expiration of that time sold at a loss, then that is the loss which Harkins has guaranteed will be reimbursed.

It is our view that, under the agreement here in question, the period of speculation for which Harkins was to carry the exposure, was limited to the two years provided for in the letter agreement. Thus, it is our conclusion that the trial court correctly found the damages to be the amount of loss the Crowes would have sustained had they sold at the expiration of such two-year period.

The judgment of the trial court is affirmed, with costs of this appeal assessed against the appellants.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and HUMPHREYS, JUSTICES, concur.